FOR PUBLICATION

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

```
                                    )
                                    )
FOREST EDWIN BELL and JESSE MILLER, )
                                    )
          Plaintiffs,               )
                                    )
v.                                  )      Civil No. 2008-100
                                    )
USAA CASUALTY INSURANCE COMPANY,    )
                                    )
          Defendant.                )
_____)
```

ATTORNEYS:

**Lee J. Rohn, Esq.**
St. Croix, U.S.V.I.
    *For the plaintiffs.*

**Daryl C. Barnes, Esq.**
**Emily A. Shoup, Esq.**
St. Croix, U.S.V.I.
    *For the defendant.*


**MEMORANDUM OPINION**


**GÓMEZ, C.J.**

     Before the Court is the motion of the defendant, USAA

Casualty Insurance Company ("USAA"), for summary judgment against

the plaintiffs, Forest Edwin Bell and Jesse Miller (together, the

"Plaintiffs").

## I. FACTUAL AND PROCEDURAL BACKGROUND

     The Plaintiffs are a married couple who live in

Massachusetts.  On or about December 8, 2005, Bell was hit by a

car on St. Thomas, U.S. Virgin Islands.  Lindsey Evans, the

driver of the car, was underinsured.

Bell is insured by USAA, a Texas corporation that does

business in the Virgin Islands, under Massachusetts Personal

Automobile Policy Number 009139020C71073 (the "Policy").  The

Policy has a $10,000 coverage limit for medical payments.  USAA

has tendered that limit to Bell.

The Plaintiffs commenced this lawsuit in June 2008, alleging

that USAA "included or should have included an underinsured

coverage in the amount of $100,000 per person and $200,000 per

accident." (Compl. ¶ 7.)  They further allege that if the Policy

did not include underinsured coverage, USAA should have informed

them of that fact.  The Plaintiffs assert three claims against

USAA: breach of contract; breach of the duty of good faith and

fair dealing; and bad faith.[1]

USAA now seeks summary judgment against the Plaintiffs.

Although the motion purports to seek dismissal of the Plaintiffs'

complaint in its entirety, the motion does not expressly address

---

[1]  The general allegations section of the complaint also
alleges that Miller "was in the zone of danger and witnessed
[Bell's car] accident, and suffered loss of consortium." (Compl.
¶ 4.)  That allegation does not reappear as a separate cause of
action.  In a footnote in the conclusion of its motion, USAA
asserts that Miller cannot recover against USAA for loss-of-
consortium.  The Court reads the Plaintiffs' allegation in this
regard as surplusage and does not address it here.

the Plaintiffs' bad faith claim.  As such, the Court construes

the motion as one for partial summary judgment.  The motion is

unopposed.[2]

## II. <u>DISCUSSION</u>

Summary judgment is appropriate if "the pleadings, the

discovery and disclosure materials on file, and any affidavits

show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c); *see also Hersh v. Allen Products Co.*, 789

F.2d 230, 232 (3d Cir. 1986).

The movant has the initial burden of showing there is no

genuine issue of material fact, but once this burden is met it

shifts to the non-moving party to establish specific facts

showing there is a genuine issue for trial. *Gans v. Mundy*, 762

F.2d 338, 342 (3d Cir. 1985).  The non-moving party "may not rest

upon mere allegations, general denials, or . . . vague statements

. . . ." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir.

---

[2]  The motion was filed on May 4, 2009.  Accordingly, the
Plaintiffs were required to file their opposition, if any, no
later than May 26, 2009. *See* LRCi 56.1(b); Fed. R. Civ. P.
6(a)(3).  The Plaintiffs did not do so.  Instead, on June 25,
2009, they moved for an extension of time to respond to the
motion.  On July 8, 2009, the magistrate judge granted that
motion, allowing the Plaintiffs until July 27, 2009 to respond to
the motion.  The magistrate judge's order does not grant that
relief *nunc pro tunc* to May 26, 2009, the day by which the
Plaintiffs' opposition was due.

1991). "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* In making this determination, this Court draws all reasonable inferences in favor of the non-moving party. *See Bd. of Educ. v. Earls*, 536 U.S. 822, 850 (2002); *see also Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

### III. <u>ANALYSIS</u>

**A. Choice of Law**

The resolution of USAA's motion requires the Court to consider the Policy. The Policy bears a relationship to two forums: the Virgin Islands and Massachusetts. As a consequence, the Court must determine which of those two forums' laws govern the Policy's interpretation. *See PHP Liquidating, LLC v. Robbins (In re PHP Healthcare Corp.)*, 128 Fed. Appx. 839, 843 (3d Cir. 2005) (per curiam) (unpublished) ("When two states have a connection to a case and an issue arises on which the states' respective laws differ, a choice of law must be made."). As the basis for the Court's jurisdiction is diversity-of-citizenship,

*see* 28 U.S.C. § 1332; 48 U.S.C. § 1612(a), the Court must apply
the Virgin Islands' choice-of-law rules. *Homa v. Am. Express Co.*,
558 F.3d 225, 227 (3d Cir. 2009); *Shuder v. McDonald's Corp.*, 859
F.2d 266, 269 (3d Cir. 1988).

No provision of the Virgin Islands Code sets forth rules
governing choice-of-law in matters of contract interpretation.
In the absence of such a provision, the Virgin Islands Code
points to the Restatement for the applicable law. *See* V.I. CODE
ANN. tit. 1, § 4 ("The rules of the common law, as expressed in
the restatements of the law . . ., shall be the rules of decision
in the courts of the Virgin Islands in cases to which they apply,
in the absence of local laws to the contrary.").  The Restatement
provides for two choice-of-law scenarios: one in which the
parties have expressly or impliedly chosen which law they wish to
have applied, and another in which they have not elected for any
particular state's law to apply.

In the first scenario, a contract is interpreted according
to the law chosen by the parties so long as "the particular issue
is one which the parties could have resolved by an explicit
provision in their agreement directed to that issue" and unless
"application of the law of the chosen state would be contrary to
a fundamental policy of a state which has a materially greater
interest than the chosen state in the determination of the

particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties." Restatement (Second) of Conflict of Laws §§ 186, 187 (1989) ("Restatement").

In the second scenario, the Restatement requires a determination, based on the balancing of several factors, of which state "has the most significant relationship to the transaction . . . ." Restatement § 188. Those factors include: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." *Id.* These factors "are to be evaluated according to their relative importance with respect to the particular issue." *Id.*

USAA contends that Bell's policy was issued in Massachusetts and therefore that Massachusetts law applies.[3] USAA does not expressly state that the Policy includes a choice-of-law provision but suggests as much by asserting that the Policy "is subject to the laws of Massachusetts" and citing to the Policy itself. (Def.'s Statement of Undisputed Facts Supp. Summ. J. ¶

---

[3] Strangely, notwithstanding that contention, USAA cites Virgin Islands law governing the general interpretation of insurance policies.

6.)  The precise provision of the Policy on which USAA relies to support that suggestion is unclear.  As far as the Court can tell, the Policy does not explicitly provide that Massachusetts law governs its construction and application.[4]

The United States Court of Appeals for the Third Circuit confronted a similar scenario in *Assicurazioni Generali, S.P.A. v. Clover*, 195 F.3d 161 (3d Cir. 1999).  The insurance policy in that case contained no explicit choice-of-law provision.  The Third Circuit noted, however, that the policy was "drafted in accordance with Indiana law, and includes the [underinsured motorist] Endorsement required by that state." *Id.* at 164 (quotation marks and citation omitted).  The court explained that under the Restatement, "a contract's references to the laws of a particular state may provide persuasive evidence that the parties to the contract intended for that state's law to apply." *Id.* at 165 (citing Restatement § 187 cmt. a).  In the Third Circuit's view, "[t]he repeated references to Indiana law in the endorsement, and [the insurer's] unmistakable intent that the [underinsured motorist] coverage as set forth in the endorsement not only comply with, but clearly track Indiana law, demonstrate that the parties at least implicitly and perhaps even explicitly

---

[4]  The Plaintiffs, having elected not to respond to USAA's motion, have offered no input on this point.

chose Indiana law to govern the policy's terms." *Id.*  Based on
that reasoning, the court concluded that Indiana law governed the
policy.

Here, as in *Clover*, the Policy does not explicitly mandate
the application of any state's law.  It is, however, called a
"Massachusetts Automobile Insurance Policy" and stipulates that
it "is a legal contract under Massachusetts law." (Def.'s
Statement of Undisputed Facts Supp. Summ. J., Exh. A-1 at 5, 10.)
Indeed, the Policy elsewhere brims with references to the laws of
Massachusetts.  For instance, in its introductory section, the
Policy states that "[t]here are four Parts to Compulsory
Insurance.  They are all required by law.  Every auto registered
in Massachusetts must have them." (*Id.*, Exh. A-1 at 8.)  In the
Optional Insurance section, the Policy states that "we must sell
you any or all of the Optional coverages you wish, subject to
certain deductibles and limits specified in Massachusetts law."
(*Id.*, Exh. A-1 at 19.)  In the Pre-Insurance Inspection
explanation, the Policy reads: "Massachusetts law requires that
we inspect certain motor vehicles before providing coverage for
Collision, Limited Collision, or Comprehensive[.]" (*Id.*, Exh. A-1
at 35.)  Most importantly, perhaps, the Policy explains that
"[t]here are many laws of Massachusetts relating to automobile
insurance.  We and you must and do agree that, when those laws

apply, they are part of this policy." (*Id.*, Exh. A-1 at 10.)

Under these circumstances, the Court finds that the Policy adequately evinces the parties' intent to have Massachusetts law govern the Policy's interpretation. As such, the Court need not determine whether Massachusetts or the Virgin Islands has a more significant relationship to the Policy.[5] *See*, *e.g.*, *Hatchigian v. State Farm Ins. Co.*, No. 07-3217, 2008 U.S. Dist. LEXIS 96161, at *17-18 (E.D. Pa. Nov. 25, 2008).

The Court also does not find that the application of Massachusetts law violates a fundamental policy of the Virgin Islands.[6] Both jurisdictions require motorists to purchase basic

---

[5] It bears noting that the Restatement's most-significant-relationship test would likely yield the same outcome. The several factors enumerated above, on balance, weigh in Massachusetts' favor, as the Policy was issued in Massachusetts, probably negotiated there, and the Plaintiffs live in that state.

[6] Virgin Islands law states that

[n]o insurance contract delivered or issued for delivery in this territory and covering subjects located, resident, or to be performed in this territory, shall contain any condition, stipulation, or agreement which . . . requires it to be construed according to the laws of any other territory, state or country except as necessary to meet the requirements of the motor vehicle financial responsibility laws of such other territory, state or country[.]

V.I. CODE ANN. tit. 22, § 820. This provision is inapplicable here, as there is no dispute that the Policy Bell purchased from USAA was not "delivered or issued for delivery in" the Virgin Islands.

automobile insurance. *See* V.I. CODE ANN. tit. 20, §§ 701-713;

MASS. GEN. LAWS ANN. ch. 175, §§ 113A-113W (Lexis 2009). Moreover,

just as there is no requirement under Virgin Islands law that a

motorist obtain underinsured motorist coverage ("UIM"), UIM is

also not compulsory in Massachusetts. MASS. GEN. LAWS ANN. ch. 175,

§ 113L(2) (Lexis 2009); *see also Hanover Ins. Co. v. Shedd*, 676

N.E.2d 835, 836 (Mass. 1997); *Smart v. Safety Ins. Co.*, 643

N.E.2d 435, 438 (Mass. 1994) (explaining that a "1988 amendment

made underinsured motorist coverage optional with the insured . .

. and left uninsured motorist coverage as a compulsory one").

Accordingly, the Court concludes that Massachusetts law

governs the parties' dispute.

**B.    Merits**

In Count One, the Plaintiffs assert a breach of contract

claim. They allege that USAA has breached the Policy by refusing

to tender the Policy's coverage limit.

To establish a breach of contract claim under Massachusetts

law, a plaintiff is required to show "that (1) an agreement was

made between the plaintiffs and the defendant supported by valid

consideration; (2) the plaintiffs have been ready, willing, and

able to perform; (3) the defendant's breach has prevented them

from performing and (4) the plaintiffs have suffered damage."

*Singarella v. Boston*, 173 N.E.2d 290, 291 (Mass. 1961); *see also*

*Guckenberger v. Boston Univ.*, 974 F. Supp. 106, 150 (D. Mass. 1997) (citation omitted).

USAA asks for summary judgment on the Plaintiffs' breach of contract claim based on two primary arguments. First, USAA asserts that it performed its obligations under the Policy when it tendered the Policy's coverage limit for medical expenses to Bell. USAA has submitted the affidavit of one its claims service managers, Phillip Hearn. Hearn avers that "[t]he limits of Mr. Bell's Medical Payments coverage, $10,000.00, have been paid in full." (Hearn Aff. ¶ 8, May 4, 2009.)

Second, to the extent the Plaintiffs' breach of contract claim is predicated on USAA's alleged failure to tender the UIM limit to Bell, USAA contends that UIM is optional under Massachusetts law and that the Policy simply does not contain UIM because Bell opted not to buy any. In support of that contention, USAA relies on the Policy itself as well as Hearn's affidavit.

The "Coverage Selections Page" of the Policy outlines those expenses that are covered under the Policy. At the top of the Coverage Selections Page, the Policy states: "This policy provides only the coverages for which a premium charge is shown." (Def.'s Statement of Undisputed Facts Supp. Summ. J., Exh. C.) Under the section titled "Optional Insurance," several types of

insurance are listed.  One of those types of insurance is "Bodily Injury Caused By An Underinsured Auto."  In an adjacent column, titled "Premium," the space provided is blank.

Based on the competent evidence discussed above and the governing legal authority, the Court finds that USAA has met its initial summary judgment burden of showing that USAA has fulfilled its contractual duty by tendering the Policy's limit to Bell.  The Court also concludes, based on the same evidence and authority, that USAA had no duty to tender UIM limits to the Plaintiffs, as it is undisputed that Bell elected not to purchase UIM. *See Dullea v. Safety Ins. Co.*, 674 N.E.2d 630, 632 (Mass. 1997) ("A limited amount of underinsured motorist coverage was provided by the policy in question.  The plaintiff had the option and chose not to buy additional coverage; that was her election."); *see also*, *e.g.*, *Kelliher v. Hanover Ins. Co.*, No. 2004-01050, 2007 Mass. Super. LEXIS 277 (Mass. Super. Ct. June 22, 2007).  Ordinarily, the burden would shift to the Plaintiffs to come forward with evidence to rebut that of USAA.  Because the Plaintiffs have failed to oppose USAA's motion, they have not met this burden.  Accordingly, the Court will grant USAA summary judgment on the Plaintiffs' breach of contract claim.

In Count Three[7] of the their complaint, the Plaintiffs
assert that USAA breached the duty of good faith and fair
dealing. The complaint does not make entirely clear the nature
of that alleged breach.

Under Massachusetts law, "[e]very contract is subject to an
implied covenant of good faith and fair dealing." *Liss v.
Studeny*, 879 N.E.2d 676, 680 (Mass. 2008) (citation omitted).
"The purpose of the covenant is to guarantee that the parties
remain faithful to the intended and agreed expectations of the
contract and to ensure that neither party shall do anything that
will have the effect of destroying or injuring the right of the
other party to receive the fruits of the contract." *Id.*
(quotation marks and internal citation omitted). Furthermore,
the covenant "may not . . . be invoked to create rights and
duties not otherwise provided for in the existing contractual
relationship." *Uno Restaurants, Inc. v. Boston Kenmore Realty
Corp.*, 805 N.E.2d 957, 964 (Mass. 2004).

USAA evidently collapses its breach of contract argument
with its challenge to Count Three. USAA maintains, for

---

[7] Count Two and Count Three are inverted in the complaint
due to what must be counsel's inadvertence. That is, what
follows Count One is a count labeled as Count Three, which in
turn is followed by Count Two. The Court refers to the counts as
they are labeled in the complaint, not as they sequentially
appear.

essentially the same reasons as those discussed above, that it

owed no duty to tender UIM limits to Bell because Bell did not

buy UIM. Because "[t]he scope of the covenant [of good faith and

fair dealing] is only as broad as the contract that governs the

particular relationship," *Ayash v. Dana-Farber Cancer Inst.*, 822

N.E.2d 667, 684 (Mass. 2005), and because it is undisputed that

USAA both tendered the Policy's limit to Bell and owed no duty to

tender UIM limits to Bell, summary judgment is warranted on Count

Three. *See*, *e.g.*, *Galvin v. Excel Switching Corp.*, No.

2004-2997-BLS, 2006 Mass. Super. LEXIS 295, at *34 (Mass. Super.

Ct. May 31, 2006) ("Because the defendants acted consistently

with the clear terms and spirit of the Option Agreement, they did

not deprive the plaintiffs of the fruits of their contract.

Accordingly, the defendants are entitled to judgment as a matter

of law on the plaintiffs' claim of breach of the covenant of good

faith and fair dealing.").[8]

---

    [8]  To the extent Count Three rests on the Plaintiffs'
allegation that USAA allegedly "failed to inform" them that they
should buy UIM, summary judgment is still warranted. The
plaintiffs in *Robinson v. Charles A. Flynn Ins. Agency*, 653
N.E.2d 207 (Mass. App. Ct. 1995), advanced a similar argument.
They claimed that insurance agents owe their clients a duty "to
inform and advise them as to the availability of uninsured and
underinsured motor vehicle coverage up to the limits of the
bodily injury liability coverage the clients carry." *Id.* at 207-
08 (alteration and quotation marks omitted). The Massachusetts
Appeals Court rejected that position, reasoning that "[s]uch a
sweeping duty finds no support, as the plaintiffs' concede, in
Massachusetts appellate decisions." *Id.* at 208. The court noted

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court will grant USAA's motion as it pertains to Count One's breach of contract claim and Count Three's claim alleging a breach of the duty of good faith and fair dealing.  Count Two's bad faith claim remains pending.  An appropriate judgment follows.



S\_____
                        **CURTIS V. GÓMEZ**
                          **Chief Judge**

---

as well that "[s]upport in other jurisdictions [for that position] is spotty at best." *Id.* (citations omitted).  The court reasoned that such a duty may arise where there are "special circumstances of assertion, representation and reliance[.]" *Id.* at 207 (quotation marks omitted).  No such circumstances are alleged here.  *Robinson* clearly forecloses the Plaintiffs' argument in this vein.